# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| JOSEPH T. LYNCH, <br>     Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security <br> Administration, <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **CIVIL ACTION** <br> **NO. 16-40147-TSH** |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (Docket No. 17) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (Docket No. 20)
**March 26, 2019**

HILLMAN, D.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") denying the application of Joseph T. Lynch ("Plaintiff") for Social Security Disability Insurance Benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). An administrative law judge (ALJ) found that Plaintiff was not disabled from January 1, 2012, his alleged onset date, through February 23, 2015, the date of the decision, because he was capable of performing a significant number of unskilled sedentary jobs that would accommodate his heart condition and moderate mental limitations. Plaintiff filed a motion for judgment to reverse the decision of the Commissioner (Docket No. 17). The Commissioner filed a cross-motion seeking an order affirming the decision of the Commissioner (Docket No.

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, replacing Carolyn W. Colvin. *See* Fed. R. Civ. P. 25(d).

20).[2] For the reasons set forth below, Defendant's motion is **_granted_** and Plaintiff's motion is **_denied_**.

## Discussion

The parties are familiar with the factual history of this case and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the Plaintiff.

On April 26, 2013, Plaintiff protectively filed for DIB and SSI (AR. 97-98, 243-55), alleging that he became disabled on January 1, 2012, due to bipolar disorder and a "heart defibrillator" (AR. 271). He said he was fired from his management position at Fitchburg State University because he was too aggressive and too passive (AR. 292, 316, 345). Plaintiff's applications were denied at two levels of administrative review (AR. 97-166), and he requested a hearing before an administrative law judge (AR. 183-84).

On January 12, 2015, Plaintiff appeared with an attorney and testified at a hearing before the ALJ (AR. 49-96). A vocational expert also testified (88-94). On February 23, 2015, the ALJ found that Plaintiff was not disabled (AR. 20-48). That decision became final on August 8, 2016, when the Appeals Council denied review (AR. 1-6). *See* 20 C.F.R. §§ 404.981, 416.1481.

### *The ALJ's Findings*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, his alleged onset date (AR. 26). At step two, the ALJ found that Plaintiff had the following severe impairments: cardiac condition and atrial fibrillation following mitral valve repair surgery; affective disorder; and personality disorder (AR. 26). At step three, the ALJ

---

[2]A transcript of the Social Security Administration Official Record (*"AR."*) has been filed with the court under seal. (Docket No. 14). Citations to the AR page numbers are those assigned by the agency and appear on the lower right hand corner of each page.

2

found that Plaintiff's impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR. 26-27). Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) for sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),2 except that:

> He has frequent ability to stoop, kneel, and crouch. The claimant has occasional ability to balance, crawl, and climb ramps and stairs. He must not climb ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to extreme heat, cold, humidity, and wetness. He must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases. The claimant must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery, including automotive machinery. He is able to perform work that consists of unskilled tasks, work with simple work related decisions with few workplace changes. There can be brief and superficial interaction with the general public. There can be occasional interaction with coworkers and with supervisors.

(AR. 27-42). At step four, the ALJ found that Plaintiff could not do his past relevant work as a facilities manager or maintenance supervisor (AR. 42). At step five, the ALJ found that Plaintiff was not disabled because he could still do a significant number of other jobs, i.e., order clerk, shipping checker, and visual inspector (AR. 42-43, citing AR. 91-93).

## **Standard of Review**

This Court may not disturb the Commissioner's decision if it is grounded in substantial evidence. 42 U.S.C. 405(g); 1383(c)(3). Substantial evidence exists when there is sufficient evidence that a reasonable person could agree with the conclusion. *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981). Thus, this Court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion, even if the administrative record could support multiple conclusions." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quotation marks and citation omitted).

**Discussion**

In his assessment, the ALJ acknowledged that Plaintiff's heart condition and mental impairments severely limit his functions and took that into account when he assessed Plaintiff's RFC for simple, sedentary work with limitations on the social and environmental conditions. (AR. 27-42). The relevant question is not whether Plaintiff was symptom-free, but whether his symptoms were persistent and severe enough to preclude all substantial gainful employment. The RFC "is the most you can still do despite your limitations." 20 C.F.R. 416.945(a)(1), The ALJ's RFC conclusion only needed to assess the necessary conditions for Plaintiff to work given his limitations.

Plaintiff first argues that the decision of the Commissioner should be reversed because the Vocational Expert (VE) testified that there were "no jobs available" for the Plaintiff. At the hearing, the ALJ asked a VE to consider a hypothetical individual, with the same age, education, work history, and RFC as Plaintiff (AR. 91; *see* AR. 27-28). The VE testified that such an individual could perform unskilled sedentary jobs as an order clerk, shipping checker, or visual inspector, which were just representative examples of the sedentary jobs available (AR. 92-93). The VE testified that no jobs would accommodate someone who needed to be off-task 20 percent of time or miss three days of work per month (AR. 93).

The ALJ was not required to rely on VE testimony if it assumed greater restrictions than that which the record reflects. An ALJ is permitted, however, to rely on the testimony of a VE provided that the VE's testimony is in response to a hypothetical that accurately reflects the claimant's limitations. *See Groulx v. Apfel*, No. Civ. 98–692–B, 2000 WL 1466152, at *6 (D.N.H. Jan.4, 2000); *Berrios Lopez*, 951 F.2d at 429; *Arocho v. Sec'y of Health & Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). Here, the ALJ's hypothetical to the VE contained all

of the limitations set forth in the ALJ's RFC finding, which were supported by substantial record evidence.

Next, Plaintiff contends that the ALJ identification of him as a "younger individual" materially impacted his placement on the Medical Vocational Guidelines (Grids), and likewise his disability determination. Plaintiff was 44 years old when he stopped working, and 47 years old when the ALJ issued his decision.

"The term "younger individual" denotes an individual (age 18 through 49). *See* 20 C.F.R. Pt. 404, Sub. pt. P., App. 2, Rule 201.18. For individuals age 45-49, there is a presumption that finding work becomes progressively more difficult than for people under age 45. *Id*. But that presumption only warrants finding of disabled if the 45- to 49-year old meets four criteria: (i) he is restricted to sedentary work, (ii) he is limited to unskilled work, (iii) there is no past relevant work that he can do, and (iv) he is illiterate or unable to communicate in English. *Id*.; *see also* Rules 201.17-201.22. The Grids direct a finding of disabled only if the same individual is illiterate or unable to communicate in English. *Id*., Rule 201.17. Here, Plaintiff can read, write, and speak English, therefore this issue is immaterial to the ALJ's findings.

Plaintiff then generally asserts that the ALJ failed to consider the entire record in support of his concerns, in particular with respect to Dr. Papageorgiou, and that the ALJ discredited certain statements that supported his disability. In particular, Plaintiff contends that the ALJ discredited his own statements relating to the intensity, persistence and limiting effects of his symptoms. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the court must affirm the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez*, 647 F.2d at 222.

Here, substantial evidence supports the ALJ's decision that Plaintiff's subjective complaints were not sufficiently supported by the medical record. Though Plaintiff does point to some medical records that tend to support his disability claim, the record must be read in its totality. The ALJ noted Plaintiff's ability to perform some activities of daily living; his oft mentioned desire to get back to work; his demeanor and testimony at the hearing; widely varying reports of disabling mood swings and anxiety that are not consistent with his conservative psychiatric treatment and his mostly normal mental status examinations; stable heart condition; and improved symptoms when he took psychiatric medications.

The ALJ's RFC assessment is supported by the medical record, which reflects that Plaintiff could tolerate a reduced range of simple, sedentary work, with the ability to lift up to 20 pounds. The ALJ went on to add additional lifting and social restrictions that none of the State agency consultants proposed. Furthermore, the ALJ's RFC assessment is generally consistent with Dr. Papageorgiou's opinions. The ALJ did not adopt (1) the restriction on balancing (the ALJ found that Plaintiff could occasionally balance), and (2) the recommendation to avoid any exposure to extreme temperatures and workplace hazards. There is not reversible error however, where as here, the jobs relied on by the VE and the ALJ did not involve any balancing or exposure to extreme temperatures or workplace hazards. *See Kolek v. Colvin*, No. 13-cv-30156-MAP, 2014 WL 6893554, at *2 (D. Mass. Dec. 5, 2014).

Next, Mr. Lynch argues that the report of nurse practitioner Elzira DeOliveira, APRN, was not given proper weight and consideration by the ALJ. It is true that DeOliveira was a Nurse Practitioner (APRN) and thus not an "acceptable medical source." SSR 06-3p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006). Opinions from "other" sources such as DeOliveira are, however, "important and should be evaluated on key issues such as impairment severity and functional

effects, along with the other relevant evidence in the file." SSR 06–3p, 71 Fed. Reg. at 45, 595. DeOliveira met with Lynch one time, for the purpose of filling out the EAEDC form, therefore there are no treatment records upon which to rely. Nevertheless, the ALJ addressed DeOliveira's opinion and gave appropriate weight to her non-specific conclusion that Plaintiff work was "affected," but that his limitations did not prevent him from working altogether.

Plaintiff next contends that the ALJ did not properly consider the provisional diagnosis of Mark Brooks, Ph.D., who examined Plaintiff in connection with his disability claim. During Plaintiff's appointment on June 23, 2013, he reported to Dr. Brooks that he was experiencing suicidal thoughts and heard voices. Plaintiff went on to deny those very symptoms on the same day during an intake assessment with social worker Erica Corley, at the Leominster Hospital emergency department. The ALJ was not, however, required to accept Dr. Soria's analysis when it conflicted with other medical evidence in the record supporting a finding of lesser impairment. *Rodriguez*, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence ... is for [the ALJ], not for the doctors or for the courts.").

Finally, Plaintiff contends that at a time in 2014, his primary care physician, Dr. Gustafson refused to treat him as the doctor no longer accepted his health insurance. This information, however is not material to the ALJ decision. Further, Plaintiff continued to receive care from other health care providers.

## Conclusion

For the reasons set forth above, Plaintiff's Motion to Reverse Decision of the Commissioner (Docket No. 17) is ***denied*** and Defendant's Motion for Order Affirming the Commissioner's Decision (Docket No. 20) is ***granted***.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE